[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action, returnable March 10, 1992, for dissolution of marriage and for other relief brought by the plaintiff husband against the defendant wife. The parties were married at Sweetwater, Tennessee on December 27, 1963, a marriage of 29 years. There are two children issue of this marriage, Carey Reed (date of birth February 28, 1968) and Ashley Reed (date of birth September 16, 1970), both of whom have attained their majority.
The plaintiff, whose date of birth is February 18, 1938, is 55 years of age. He enjoys good health, although he is a recovering alcoholic since 1979. The plaintiff graduated from the University of Tennessee in 1961 with a Bachelor of Science degree in Political Science. He later achieved a Master of Business Administration degree from Sacred Heart University in 1981. The plaintiff maintained a career in sales, working for several employers. He started with I.B.M. in Knoxville, Tennessee, and eventually worked for Xerox Medical Systems as CT Page 4682 Eastern Region Sales Manager. This position concluded in 1987. Thereafter the plaintiff's employment was as the only employee of Document Processing Equipment. This venture lasted about one year as Document Processing Equipment was liquidated after about one year of existence. The plaintiff then elected to dedicate himself to East Coast Army Navy Inc. In addition, the plaintiff started Reed Products Corp, which deals in janitorial supplies, paper supplies, executive apparel and uniforms. In 1991 Reed Products, Inc. merged into East Coast Army Navy Inc., with East Coast Army Navy Inc. being the surviving corporation, but to change its name to Reed Products, Inc. (see plaintiff's Exhibit A.) This was done for tax purposes as the surviving corporation, Reed Products Inc., has a carry forward loss of $157,695.00 as shown on its tax return. (See defendant's Exhibit 3). This is a very valuable asset. The plaintiff is the majority shareholder of Reed Products, Inc. and its driving force. Basically, Reed Products, Inc, is only as good as Charles H. Reed.
The defendant, whose date of birth is February 18, 1942, is 51 years of age. She enjoys good health. The defendant obtained a nursing certificate from East Tennessee Baptist Hospital in Knoxville Tennessee. She also obtained a Bachelor of Science Degree from Sacred Heart University in 1983.
The defendant worked during the first years of the marriage, but stopped working when their children were born. The defendant remained at home as mother and homemaker until the children reached middle school age in 1978 or 1979. She returned to work at St. Vincent's Hospital on a part time basis but later worked full time, which she continues to do.
During the course of their marriage, the plaintiff worked for seven different employers which led to seven major moves, all of which were supervised by the defendant. These moves entailed finding new friends, new stores, new doctors, new schools, and new neighborhoods. All the problems of a major move. The plaintiff was able to devote himself to his new position.
In addition, the defendant was both mother and father to the children as the plaintiff's sales positions sometimes took him away from the home from Monday to Friday and he was also in Europe quite a bit. CT Page 4683
The defendant was a dutiful wife. She turned her paycheck over to the plaintiff, except for a few dollars for gas and lunch money.
The defendant endured a marriage wherein her spouse was alcoholic, becoming progressively worse until 1979 when the plaintiff enrolled at Guenster Rehabilitation. Commendably the plaintiff has been a recovering alcoholic since that time.
At about this time, the defendant reiterates that the plaintiff attempted to urinate in a closet and the plaintiff pushed the defendant down, breaking her arm. Although the plaintiff claims he does not remember the incident, he sent her flowers and apologized the next day. Despite this ordeal, the defendant was willing to continue the marriage. Marriage was until death do us part. All in all, the defendant was a good wife and a good mother, always willing to support and stand by her husband.
Both parties inherited substantial sums during their marriage. In 1991, the plaintiff inherited his parents home in Tennessee, identified as 305 Mapleloop Road, Knoxville, Tennessee on his financial affidavit dated January 9, 1992 (sic). In addition, he also inherited $100,000; $40,000.00 of which was used to retire business debt, and $60,000.00 of which was used as a down payment in the purchase of certain real estate, identified as 94-96 New Street, Shelton, Conn. on his said financial affidavit.
The defendant inherited approximately $200,000 as a result of her father's death in March 1986. She used about $20,000.00 to renovate the parties' home in Fairfield. She used about $10,000.00 as a down payment in the purchase of an unimproved lot in Loudon, Tennessee as shown on her financial affidavit dated the 11th day of January, 1993. She also commingled her money with the parties' joint checking account (as she did not want money to come between them) and the plaintiff drew on said funds and used about $25,000.00 for Document Processing Equipment and used about $15,000.00 for East Coast Army Navy, Inc. and used other substantial sums to pay debts, for a total of about $68,000.00. The defendant also invested in a Tax Deferred Annuity with a present value according to her said financial affidavit of approximately $80,000.00 net.
The defendant's father also provided a down payment in the CT Page 4684 amount of $5,000.00 toward the purchase of certain real estate by the parties in Atlanta, Georgia. This $5,000.00 is traced to the real estate at 1084 Mill Plain Road, Fairfield, Connecticut as part of the down payment towards the purchase.
The plaintiff denies that he is at fault in this dissolution of marriage proceeding and further denies that he has contributed to the alleged breakdown of their marriage. The reasons that the plaintiff gives or the breakdown of the marriage are nothing more than superficial, unsubstantiated excuses, not really reasons. He attributes the breakdown of their marriage entirely to the defendant. His charges include that he was dissatisfied for a number of years because the defendant did not cooperate in "Budget Planning" and sit down with the defendant to allocate their money and run their marriage as a partnership. The defendant counters that the plaintiff interwove his business expenses with their personal expenses. Try as she did, she just could not keep up with the plaintiff and his finances and just simply gave up.
The plaintiff also charged that he wanted more children but the defendant had a tubal ligation without notice to him. Again the defendant testified that she did not want any more children because she was solely responsible for raising their children and did not want any more children. The defendant also testified that she discussed the tubal ligation with the plaintiff and he wrote a letter to her doctor permitting said tubal ligation and, further, he drove her to the hospital for the surgical procedure.
The plaintiff also charged that discipline of the children was at issue. However, the defendant dealt with discipline in a firm and loving manner.
The plaintiff also charged that the defendant removed him from her will. However, the defendant merely allocated 1/3 of her inheritance invested in tax deferred annuities to the plaintiff and 2/3 to their children. Yet the plaintiff was still the beneficiary of all the rest residue and remainder of her estate.
The plaintiff also claims that the defendant has grown old and is no longer attractive to him. This is a very disgenuous contention. CT Page 4685
This is a dissolution that the defendant did not ask for and one that she did not want. The dissolution is entirely motivated and fueled by the plaintiff. The singular reason for the plaintiff wanting a dissolution is his involvement and romantic attachment to his office secretary, one Barbara Ellis.
Although the plaintiff denied this, the underlying facts belie his denial. His continued involvement with her, the giving of gifts, a recent raise to her of $40.00 per week at a time when the business was financially suffering, the purchase of 94-96 New Street and the location of Barbara Ellis, as a tenant at a reduced rate, the repairs and decorating of her apartment, the late night rendezvous, and dinner engagements all totally undermine the plaintiff's contentions.
In determining the proper orders in this case the court must consider the factors set forth in 46b-81, 46b-82 and46b-62 of the General Statutes. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente vs. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992). CT Page 4686
In the recent case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
As has been said by the Appellate Court in the recent case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531 (1992):
 "General Statutes 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). . . .
 The statutory factors for determining alimony in 46b-82 are almost identical to the factors used to distribute property in 46b-81 (c)."
The court has considered all of the criteria of 46b-81,46b-82 and 46b-62 of the General Statutes and all of the evidence and the case law. Since "[i]t would serve no useful purpose to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make CT Page 4687 express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1,5 (1985), and that the court need not give equal weight to each factor. Kane v. Perry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the findings noted herein, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff is ordered to pay alimony to the defendant in the amount of $1.00 per year, which shall terminate upon any of the following events occurring earliest:
(a) the death of the defendant;
(b) the death of the plaintiff;
(c) the defendant's remarriage; or,
 (d) cohabitation by the defendant with an unrelated male under the provisions of 46b-86(b) of the General Statutes.
3. The plaintiff shall assign and convey all his right, title and interest in and to the real estate identified as 1084 Mill Plain Road, Fairfield, Connecticut to the defendant. The defendant shall take such real estate subject to the first, second and third mortgages. The defendant shall be responsible for paying the first mortgage and shall hold the plaintiff harmless therefrom. The plaintiff shall be CT Page 4688 responsible for paying the second and third mortgages and shall hold the defendant harmless therefrom. The plaintiff shall not increase the indebtedness of the second and third mortgages.
 In the event the said real estate at 1084 Mill Plain Road, Fairfield, Connecticut is sold prior to the retirement and satisfaction of the second and third mortgages, the defendant shall have to pay the same but the plaintiff shall reimburse the defendant in the following fashion.
 The total amount of the second and third mortgages paid by the defendant together with 7 per cent simple interest per annum on the unpaid balance shall be amortized in equal, consecutive monthly payments over a 60 month period.
 As security for the plaintiff's obligation to pay the second and third mortgages on the real estate at 1084 Mill Plain Road, Fairfield, Connecticut, the plaintiff shall give to the defendant a second mortgage of all his right, title and interest to the real estate identified as 94-96 New Street, Shelton, Conn.
 Default by the plaintiff in the payment of the first mortgage on 94-96 New Street, Shelton, Connecticut, or default in the payment of the second and third mortgages on 1084 Mill Plain Road, Fairfield, Connecticut shall permit and enable the defendant to commence foreclosure action under the second mortgage herein ordered relative to said 94-96 New Street, Shelton, Connecticut.
4. The plaintiff shall retain all right, title and interest to the real estate identified as 94-96 New Street, Shelton, Connecticut, free from any claim by the defendant (except such claim she may have hereunder as a mortgagee).
5. The plaintiff shall assign and convey all his right, title and interest in and to the real estate identified as 305 Mapleloop Road, Knoxville, Tennessee to the defendant.
6. The defendant shall retain all right, title and interest to that real estate lot in Loudon, Tennessee, free from any claim by the plaintiff.
7. The defendant shall have all right, title and interest in CT Page 4689 and to that certain 1986 Mazda 626 motor vehicle as shown on the parties' said financial affidavits.
8. The plaintiff shall retain all right, title and interest in and to that certain 1973 Buick Electra motor vehicle as shown on the plaintiff's said financial affidavit.
9. The defendant shall retain all right, title and interest to the bank accounts and credit union account shown on her said financial affidavit, free from any claim by the plaintiff.
10. The defendant shall retain all right, title and interest to the jewelry shown on her financial affidavit, free from any claim by the plaintiff.
11. The defendant shall retain all right, title and interest to all that life insurance shown on the parties' respective financial affidavits. The defendant shall be obligated to pay any premiums due thereon for such life insurance she elects to keep in force. The plaintiff shall not be responsible for the payment of any premiums incident to such life insurance.
12. The defendant shall retain all right, title and interest to the Retirement Plans shown on her said financial affidavit free from any claim by the plaintiff; namely, Peoples and Valic IRA's and St. Vincent's Daughters of Charity.
13. The defendant shall retain all right, title and interest to the Tax Deferred Annuities shown on her said financial affidavit free from any claim by the plaintiff; namely, New York Life, Valic and Mutual Benefit Life.
14. The plaintiff shall retain all right, title and interest to his jewelry as shown on his financial affidavit free from any claim by the defendant.
15. The plaintiff shall retain all right, title and interest to the bank accounts shown on his financial affidavit; namely, Shelton Savings Bank (checking account no. 012606987-0158) and People's Savings Bank (23/1675/09) free from any claim by the defendant.
16. The plaintiff shall retain all right, title and interest to CT Page 4690 Reed Products including 530 shares at No Par value as shown on his financial affidavit free from any claim by the defendant.
 In the event the plaintiff sells Reed Products, Inc. or any part of his interest therein or sells any business or part thereof of any business hereinafter acquired prior to the retirement and satisfaction of either the second or third mortgage on 1084 Mill Plain Road, Fairfield, Connecticut, or St. Vincent's Credit Union account or MBNA-VISA accounts, the proceeds of sale shall be applied first toward the satisfaction of said second and third mortgages on 1084 Mill Plain Road, Fairfield, and the St. Vincent's Credit Union account and the MBNA-VISA account.
17. The plaintiff shall retain all right, title and interest in and to that certain No. American Phillip Pension as shown on his financial affidavit free from any claim by the defendant.
18. The plaintiff shall retain all right, title and interest in and to IRA's at People's Bank as shown on his said financial affidavit, subject to the condition that the plaintiff shall make a conditional collateral assignment of said IRA's in favor of the plaintiff as security for his faithful payment of those certain debts shown on the defendant's financial affidavit as St. Vincent's Credit Union and MBNA-VISA as hereinafter ordered.
 Default by the plaintiff in the payment of the St. Vincent's Credit Union account and MBNA-VISA shall permit and enable the defendant to exercise the collateral assignment of the plaintiff's IRA's at People's herein ordered.
19. The plaintiff shall pay (or cause to be paid) and be responsible for all those debts and liabilities as shown on his said financial affidavit together with those debts and liabilities shown on the defendant's financial affidavit; namely, St. Vincent's Credit Union, MBNA-VISA, second and third mortgages on 1084 Mill Plain Road, Fairfield, Connecticut, all such debts and liabilities to be paid in a timely fashion according to the required terms of repayment. CT Page 4691
20. The parties hereto are hereby ordered to cooperate with each other and their respective attorneys in order to effectuate as promptly as possible the orders of this court and, further, the parties are hereby ordered to sign and execute all such documents and papers necessary to effectuate the orders of this court.
 In the event the parties are unable to agree on any terms of any documents hereunder including mortgages, security interests, collateral assignments, deeds, etc., in order to effectuate the orders of the court, this court shall retain jurisdiction to determine the terms of such documents.
21. The plaintiff is ordered to vacate the premises at 1084 Mill Plain Road, Fairfield, Connecticut within 30 days of the date hereof.
22. The plaintiff shall retain free from any claim by the defendant the following items of personal property:
a. all the plaintiff's clothing;
b. plaintiff's personal items;
c. all tools owned by the plaintiff;
d. antique chair and desk;
e. maple drop leaf table (formerly plaintiff's mother's);
f. dresser (formerly plaintiff's mother's).
 The defendant shall retain free from any claim by the plaintiff the Pie safe.
 All other personal property meaning furniture, fixtures and furnishings shall be mutually divided by the parties. In the event the parties are unable to divide said personal property, the issue of division of said personal property shall be referred to Family Relations Office (Bridgeport) for resolution and, absent resolution, this court shall retain jurisdiction for final determination.
23. Each party shall be responsible for their own health insurance. CT Page 4692
24. The plaintiff shall indemnify and hold the defendant harmless with respect to all previously filed joint tax returns except for any income of the defendant which was undisclosed or unknown to the plaintiff.
25. While the plaintiff is obligated to pay alimony, the plaintiff shall furnish to the defendant (contemporaneous with filing with the Internal Revenue Service) a copy of his annual income tax return together with any corporate or partnership returns and annual statements pertaining to his businesses now owned or hereafter acquired.
26. The order that the plaintiff pay the second mortgage and third mortgage on 1084 Mill Plain Road, Fairfield, Connecticut and the order that the plaintiff pay the St. Vincent's Credit Union account and the MBNA-VISA account is made for the purpose of freeing the defendant of her liability as to those obligations so that she may properly care for herself. This order is necessary for the defendant's continued economic welfare and accordingly, the plaintiff's obligation in this respect is in the nature of alimony, maintenance and support.
27. As regards the plaintiff's leased motor vehicle, the plaintiff shall make all payments required thereunder and shall indemnify and hold the defendant harmless from all said payments.
28. As regards the defendant's leased motor vehicle, the defendant shall make all payments required thereunder and shall indemnify and hold the plaintiff harmless from all said payments.
The court has considered the claims for attorney's fees filed by the parties. The parties are ordered to pay their respective attorney's fees as the court finds that any award of attorney's fees to either party will upset the balance of the property settlement that the court has ordered.
Judgment is entered accordingly.
JOHN W. MORAN, JUDGE CT Page 4693